1  Robert E. Thompson, Esq.
   110 Sutter Street, Suite 501
2  San Francisco, California  94104
   California State Bar No. 93022
3  Telephone:  (415)  543-2818
   Facsimile:  (415)  788-6144
4
   Attorney for Plaintiff
5  Gabrielle Lema

6              **UNTIED STATES DISTRICT COURT**

7          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8                    **SAN JOSE DIVISION**

9

10  _____ )
    GABRIELLE LEMA,                  )
11                                   )    **CASE NO. C07-03631 JL**
                                     )
12               Plaintiff,          )    **[PROPOSED]**
                                     )    **AMENDED COMPLAINT FOR DAMAGES**
13                                   )    **FOR DENIAL OF CIVIL RIGHTS IN**
                                     )    **EMPLOYMENT, VIOLATION OF TITLE VII**
14          v.                       )    **OF THE CIVIL RIGHTS ACT; AND**
                                     )    **VARIOUS PENDENT STATE CLAIMS**
15                                   )
    SIRVA/NAL WORLDWIDE LOGISTICS,)
16  SIRVA, INC., JUAN CORTES,        )
    JOE JENIO,                       )
17  SCOTT BLACK, KEN WHELAN,         )
    MARILYN BEARDSLEY, RAMON         )
18  PADILLA,                         )
                                     )
19               Defendants.         )
                                     )
20  _____ )

21      Plaintiff Gabrielle Lema complains of defendants Sirva/Nal

22  Worldwide Logistics, Sirva, Inc., Juan Cortes, Joe Jenio, Scott Black,

23  Ken Whelan, Marilyn Beardsley, Ramon Padilla, for violations of her

24  civil rights and alleges the following:

25  **I.    PROCEDURAL BACKGROUND**

26      1.  On April 23, 2007, following her receipt of a "Right To Sue"

27  letter, plaintiff caused the filing of a Complaint For Damages, as a

28  Pro Per plaintiff, in the Superior Court for the State of California,

1  County of Alameda, Case Number G 07322091. Plaintiff, in Pro Per, filed

2  an amendment to the State Court complaint on May 30, 2007. Thereafter,

3  On July 13, 2007, defendants Sirva/Nal Worldwide Logistics, Sirva, Inc.,

4  Joe Jenio, Scott Black, Ken Whelan, and Ramon Padilla, filed and joined

5  in a Notice of Removal, respectively.  On July 17, 2007, Sirva/Nal

6  Worldwide Logistics, Sirva, Inc., Nal Worldwide, LLC, Juan Cortes, Joe

7  Jenio, Scott Black, Ken Whelan, Marilyn Beardsley, Ramon Padilla, for

8  filed their joint Answer to the Complaint For Damages.  On August 13,

9  2007, plaintiff in Pro Per, filed an Opposition and Rebuttal to

10 Defendant's Notice of Removal of Civil Action.  On September 4, 2007,

11 undersigned counsel entered appearance to represent plaintiff in this

12 action.

13 **II.  PARTIES**

14    2.  Plaintiff is a former employee of defendants Sirva/Nal

15 Worldwide Logistics, Sirva, Inc., and a company called Nal Worldwide

16 LLC, when she was injured and discriminated against and wrongfully

17 discharged from her employment in 2006.  Defendants Juan Cortes, Joe

18 Jenio, Scott Black, Ken Whelan, Marilyn Beardsley, Ramon Padilla, were

19 supervisors, officers and/or co-workers for plaintiff and each has

20 participated in the wrongdoing which contributed to plaintiff's

21 harassment, injuries, damages.

22 **III. FACTUAL BACKGROUND**

23    3.  In or around September 2000, plaintiff began her employment

24 with defendant Sirva/Nal Worldwide Logistics and/or Sirva, Inc.

25 [hereinafter referred to collectively herein as ("Sirva, Inc.")].

26    4.  During the years of 2000, 2001, 2002 and 2003, plaintiff was

27 able to perform the tasks given her in a satisfactory manner and the

28 work environment appeared congenial.

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1      5. In 2004, plaintiff's employment experienced an ownership and

2  management change which, unbeknownst to plaintiff, would change the

3  workplace dynamic for her forever.

4      6. Following the 2004 ownership and management transition,

5  plaintiff began experiencing harassment and discrimination in the

6  workplace.

7      7. As an example of subtle yet racial remarks, plaintiff's

8  supervisor, Joe Jenio, while walking by plaintiff's cubicle and while

9  looking at her greeted plaintiff by saying "what's up sista". This

10  greeting was intentionally racial, negative and demeaning to plaintiff

11  and it was outside of the nature of their relationship.

12      8. After the ownership and management change, plaintiff's work

13  load began to increase and by July 2004, plaintiff was given more work

14  to handle at one time than her co-workers. When plaintiff inquired as

15  to why she was being over loaded with work that had been designated to

16  her co-workers, defendants Black and Cortes said they would review the

17  issue and would have all co-workers trained on all accounts so that all

18  the work would not be designated to her. Despite the fact that all

19  defendants knew that plaintiff was over worked by taking on the work of

20  her co-workers, they neither stopped giving her more work nor trained

21  all co-workers on all accounts as they represented that they would.

22      9. Beginning in December 2004 and continuing through February

23  2005, Defendant Joe Jenio would come to plaintiff's cubicle and infer

24  that a male was under her desk for sexual reasons saying things like "is

25  Johnny down there". He continued this assault to the point that it was

26  purely annoying, uncomfortable and demeaning to plaintiff. Defendant

27  Jenio would approach plaintiff from behind while se was seated and pull

28  her chair back and bend down looking under her desk and skirt while

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

presumable looking for "Johnny" under her desk. Defendant Jenio would also engage a co-worker in his harassment of plaintiff by making various sexual innuendos including his description of plaintiff as "a wild one". Eventually, the co-worker began to harass plaintiff independent of defendant Jenio, but conducting himself in a similar manner of scooting his chair close enough to plaintiff and looking under her desk, and presumably her skirt, in search of "Johnny". Defendant Jenio would also, occasionally, come up from behind and begin massaging plaintiff's shoulders. Plaintiff felt powerless as defendant Jenio was her boss. This particular conduct continued for approximately two months.

10. On another occasion, plaintiff was returning from the restroom in the office area when she was stopped by two employees. As plaintiff was standing at one of the employee's cubicle, defendant Cortes approached and asked the employee whether he had a ruler. Defendant Cortes then proceeded to bend down near plaintiff's knee where he placed the ruler against her leg, causing her to question his motives. Defendant Cortez failed and/or refused to respond and instead, left the vicinity.

11. On another occasion, Cortes showed this responding party and others a sexually inappropriate joke about nuns which he claimed to have been left in the photocopier.

12. From at least December 2004 through January 2005, throughout the day friends and co-workers of plaintiff would exchange email jokes and other communications and defendant Cortes would come into plaintiff's area, read them and participate in comment and laughter. Never had the email exchange presented a problem or generated a complaint.

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

13. In or around January 2005, defendants denied plaintiff of her requested vacation over the period which included Martin Luther King Day and instead, she was ordered to do work for another co-worker who was later given time off during that time period requested by plaintiff but denied to her by defendants.

14. The conduct of each defendant toward this responding party was couched in racial and sexual dynamics and innuendos. In their continuing effort to permeate the work environment with such inequality, defendants violated plaintiff's civil rights.

15. Once plaintiff began reporting unfair treatment to her supervisors, defendants began a pattern of picking on her and forcing her to perform more tasks and work more hours than her co-workers, to her injury and damage.

16. As an example of the continuing and discriminating treatment of plaintiff by defendants, on one occasion, plaintiff was ordered to leave her work assignment to work on an assembly line, which was not her job and would mean that she would fall behind in completing her own assignments. Plaintiff was the only account representative from her team required to do this task. When plaintiff was done with the assembly line work, defendant Cortes asked her where she was going. When plaintiff replied she was going to her computer to make sure her work was completed so that she could go home, defendant Cortes was visibly irritated, although other co-workers of plaintiff had already left for home.

17. In or around February 2005, plaintiff was informed by defendant Cortes that she had to take over a co-worker's account. When plaintiff mentioned that another co-worker had been previously trained for such an account, defendant Cortes responded that he wanted plaintiff

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1   to take on this task, despite the fact that he knew she already was

2   doing more than her share of the tasks and that by taking over the co-

3   worker's account would only leave the co-worker with one account.

4         18.  On February 10, 2005, while at work, plaintiff's zipper on the

5   front of her pants broke.  As she was looking in her desk for safety

6   pins in an attempt to close the front of her pants, defendant Padilla

7   approached her at her cubicle regarding the taking of her photograph.

8   Plaintiff asked Padilla could he come back later, but he proceeded to

9   defendant Black's office claiming that she refused to take her picture.

10   Defendant Black then approached plaintiff's cubicle and demanded that

11   she take her picture immediately.  When she cautioned defendant Black

12   that she could not get out of her chair at that time, he began yelling

13   at her and informed her that he was going to write her up.  As soon as

14   everyone left her cubicle area, plaintiff went in the bathroom with the

15   safety pins she found and closed the front of her pants.  Plaintiff was

16   crying because of the assaultive, threatening and demeaning Black

17   outburst and threat about writing her up because of the incident.  Upon

18   exiting the bathroom, plaintiff visited defendant Black's office and

19   explained the situation to him.  As she was leaving defendant Black's

20   office, she had to pass defendant Padilla and informed him that he could

21   take her picture, but she needed to first clear the results of the tears

22   from her face.  As plaintiff came out from the bathroom Padilla was

23   standing with a driver who was staring down at her zipper area. Later,

24   she received two telephone calls from two male employees  who were

25   located on the opposite side of the warehouse from each other. They each

26   indicated to her that they had heard what had transpired. After

27   receiving the second telephone call, plaintiff broke down in tears and

28   in disbelief that defendant Padilla, or anyone else, would tell people

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

especially males, about her zipper incident, as guys were now looking down between her legs to see what they can see.  Despite the fact that Black said that he was writing Padilla up for what he claimed to be harassment, he never followed through with such a writing.

19.  Indeed, on or about February 11, 2005, plaintiff was informed by another co-worker that defendant Padilla did not get in trouble for the zipper incident and instead was advised by defendant Black not to worry, "she is a woman she'll be over it about a week".

20.  In or around February 2005, a co-worker of plaintiff informed her that defendant Black instructed her not to talk to plaintiff anymore.

21.  In or around March 2005, plaintiff asked for help with some of her acquired assignments because she was feeling ill, her blood pressure was high, and the warehouse personnel were not being efficient so that the job could be completed.  Defendant Cortes ignored plaintiff's plea for help.

22.  On another occasion, a customer called plaintiff claiming that another co-worker had not done her inventory for three months and that plaintiff's supervisors told the customer that plaintiff was taking over the accounts of this co-worker.  This was the first that plaintiff had heard that she was taking over more accounts from a co-worker so she proceeded to management to obtain clarification.  Plaintiff had no knowledge of the accounts in question and asked defendant Cortes about the inventory not being done for three months and asked him whether he knew how to do the accounts but she was directed defendant Black who directed her to the co-worker whose accounts had been reassigned to plaintiff. Despite their denials to the contrary, plaintiff knew that all managers were required to know how to run the accounts and

inventory.    Once they gave the co-worker's accounts to plaintiff, plaintiff began receiving evil looks from the co-worker and the co-worker stopped talking with her.

23.  In or around March 2005, at 4:15, plaintiff was attempting to complete her work for the day so that she could leave work at 4:30, when her manager, defendant Cortes, came to her desk and questioned whether she had inbounded freight that had come in from Powerlight. When she responded that she tried several times but was unsuccessful as it kept bouncing back, and that she had another worker try and it kept bouncing back, defendant Cortes started yelling at defendant, in the presence of at least one co-worker, and ordering her to do it then hurled a stack of papers toward her and ordered her not to leave the building until she had completed the task. When plaintiff became ill and was finally allowed to leave work, she went to the doctors and discovered that her chest pain and migraines were the results of an anxiety attack.

24.  Again, on or about March 25, 2005, a customer asked plaintiff about some freight in an email. Defendants Cortes and a co-worker came to plaintiff's desk area and defendant Cortes directed her to respond to the email. Despite his knowledge that plaintiff was already swamped with other work, defendant Cortes continued his directive that plaintiff respond to the email.  Plaintiff then informed defendant Cortes that she would respond to the email once she gets her orders out but defendant Cortes continued to stand over her as if he was not going to leave until she responded to the email. Plaintiff became so stressed that everything that she was trying to hold inside of her came out and requested that defendant Cortes leave her alone.    Defendant Cortes continued to exacerbate the situation by yelling at her that "you don't do anything". When plaintiff left work that day, she went straight to the doctor's

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

office as she was experiencing more chest pains and could not stop shaking. She was so distraught that she became disoriented and went the wrong way to her doctor's office and got lost. When she arrived at the doctor's office, the doctor's assistant observed that this responding party was having difficulty and could not respond to her questions. She then took her blood pressure. When her doctor completed her examination, she said "enough is enough and I'm taking you out that job effective immediately"! When plaintiff inquired about her job, her doctor advised that she needs to worry about her health.

25.  In a continuing effort to harass plaintiff, on or about March 28, 2005, defendant Cortes called plaintiff's residence, asking her to come into work to do an evaluation which he claimed had to be completed and forwarded headquarters that week. This was plaintiff's birthday and she was on medical leave. Defendant's request caused plaintiff so much stress that she called her doctor and was told that she did not place her on leave so that she could continue to be harassed by defendants and she instructed plaintiff not to communicate with defendants. Defendant Cortes called plaintiff three more times regarding the purported evaluations. During this same period, plaintiff telephoned co-workers and found that they knew nothing of the purported evaluation.

26.  In or around April 2005, this responding party telephoned to see if they had received her Worker's Compensation paperwork and was advised by Kristy Scalous that the paperwork had been turned over to Steven Moeller however he stated that he had never seen the paperwork and she should call the insurance company. The insurance company reported that it had not seen the Worker's Compensation paperwork either.

27.  In or around April 2005, plaintiff began to have escalating

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  problems with receiving her disability pay and when she inquired she was

2  informed that defendant Marilyn Bearsdley had telephoned to say that

3  responding party was already receiving Worker's Compensation pay from

4  the company, a representation she knew to be false.

5      28.  In or around May 2005, Ken Whelan disclosed to a co-worker

6  that plaintiff's physician had ordered that she be placed on disability

7  leave, shared plaintiff's medical information with the co-worker, then

8  stated to her "I know a doctor to call to go out on disability,"

9  insinuating that plaintiff's physician was dishonest and that plaintiff

10  was not disabled.

11      29.  On or about July 15, 2005, while on disability leave,

12  plaintiff received notification that her unit had been purchased by

13  defendant Nal Worldwide LLC, and that each employee's employment was

14  transferred to the employment of defendant Nal Worldwide LLC.

15      30.  Beginning about July 2005 and continuing through September

16  2005, plaintiff began communicating with Erwin of Nal Worldwide in order

17  to change information from Nal/Sirva to Nal Worldwide.  Plaintiff

18  received her activated medical card and was able to utilize the same for

19  about a month or until her medical card failed to work.  When she called

20  Erwin regarding her medical card, Erwin had Merconi contact plaintiff

21  who informed her that she had been moved back to defendant Sirva, Inc.'s

22  coverage until she returned to work.  According to defendant Beardsley,

23  although plaintiff was moved from defendant Nal Worldwide back to Sirva,

24  Inc., she would be allowed to return to Nal Worldwide once her doctor

25  releases her to return to work.

26      31.  In or around July 2005, another co-worker of plaintiff

27  informed her that defendant Cortes instructed him to discontinue visits

28  to plaintiff's residence "because she is the enemy because she filed a

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  claim against us".

2      32.    In 2006, plaintiff discovered that defendant Black was
3  bragging about how the company "finally got rid of her," referring to
4  plaintiff.

5      33.    In or around March 2006, plaintiff telephoned Mary Menconi,
6  HR Department, and informed her that she was continuing to be harassed.
7  Menconi advised her that all she knew was she was out on long term
8  disability. She stated she would talk to the head director of human
9  resources and get back to plaintiff.  A week later plaintiff received
10 a telephone call from co-workers informing her that Erwin was in town
11 to conduct an investigation.  Plaintiff spoke to co-workers who shared
12 that she was harassed during her employment with Sirva.

13     34.    On or about March 10, 2006, while on disability leave,
14 plaintiff received a termination letter stating her position will be
15 terminated if there were no positions available for her.  Plaintiff
16 became stressed while reading this letter in disbelief that she was
17 being punished for reporting the harassment she was subjected to.

18     35.    On or about March 10, 2006, plaintiff sent two emails stating
19 that she had not yet been released to return to work and she inquired
20 about available positions within the company.  Plaintiff received no
21 response or attempt at accommodation.

22     36.    In or around March 2006, plaintiff received a telephone call
23 from Erwin stating that she had concluded her investigation and did not
24 find evidence supporting harassment claim.  In response to plaintiff's
25 inquiry into the name of the company president, Erwin refused to provide
26 the requested identity.

27     37.    On or about March 28, 2006, plaintiff's health continued to
28 worsen and felt once again she was being punished for speaking out

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

against discrimination and harassment.

38.  During times when plaintiff would receive treatment in 2005, she later discovered that her medical insurance would not always cover her medical expenses leaving her with unpaid medical bills in excess of $20,000.00.

39.  This wrongful conduct also forced plaintiff to terminate her pregnancy with her first and only child.  The fact that plaintiff was now unemployed and was in debt for more than $20,000, exacerbated plaintiff's stress.

40.  To date, defendants, and each of them, has failed and refused to redress the wrongs done to plaintiff necessitating plaintiff's pursuit of this action.

**IV.  CLAIMS FOR RELIEF**

**First Claim For Relief**
**Denial of Civil Rights**
**Race and Sex Discrimination**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e, *Et Seq*.**
**Against All Defendants**

41.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 40, above.

42.  During times relevant to plaintiff's employment with defendants Sirva, Inc., and Nal Worldwide, each defendant intimidated plaintiff and deprived plaintiff of her right to be free from intimidation, because of her race, gender, exercising of her rights in a labor dispute.

43.  During times relevant to the complaint, defendants shared a business and/or professional relationship with plaintiff.

44.  During times, each defendant engaged in verbal conduct of a hostile and sexual nature against plaintiff based on her gender and race

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  that were unwelcome, pervasive and severe.

2      45.  As a result of the employment relationship between defendants

3  and plaintiff, there was an inability by plaintiff to terminate the

4  business and/or professional relationship between herself and

5  defendants.

6  **Second Claim For Relief**
   **Harassment and Discrimination**
7  **Violation of California Government**
   **Code § 12900, *Et Seq.***
8  **Against All Defendants**

9

10     46.  Plaintiff renews and incorporates herein by reference as if

11 set forth fully below, the allegations in Paragraphs 1 through 45,

12 above.

13     47.  At all times, Government Code section 12940 Et. Seq. was in

14 full force and effect and was binding upon defendants, and each of them.

15 These state and federal statutes required defendants to refrain from

16 discrimination and harassment against an employee such as plaintiff and

17 to refrain from discharging or dismissing any individual for opposing

18 sexual harassment, sex discrimination and other forms of discrimination.

19     48.  Defendants discriminated against plaintiff on the basis of

20 sex, marital status and for otherwise opposing sexual harassment in the

21 workplace, in violation of Section 12941 by engaging in the course of

22 conduct  more fully set forth in the paragraphs set forth above and

23 below.

24     49.  Plaintiff filed a timely charge alleging sexual discrimination

25 and harassment as a result of plaintiff being a female with the Equal

26 Employment Opportunity Commission.

27 **Third Claim For Relief**
   **Harassment and Discrimination**
   **Violation of The Fair Employment And Housing Act**
28 **California Government Code § 12900, *Et Seq.***
   **Against All Defendants**

1    50.  Plaintiff renews and incorporates herein by reference as if

2  set forth fully below, the allegations in Paragraphs 1 through 49,

3  above.

4    51.  Defendants, and each of them, violated the Fair Employment and

5  Housing Act, by, among other things:

6    a. subjecting plaintiff to harassment in the workplace, as set

7  forth herein and elsewhere;

8    b. subjecting plaintiff to stalking in the workplace, as set forth

9  herein and elsewhere;

10    c. subjecting plaintiff to wrongful termination of her employment;

11    52.  Plaintiff's termination was a part of defendants'

12  discriminatory practices and in retaliation for plaintiff's disclosing

13  and pursuing her rights to complain to her employers about the

14  discriminatory and harassing treatment she was receiving.

15    53.  For the reasons stated herein and elsewhere, each defendant

16  is liable to plaintiff for all damages, whether compensatory, special

17  or punitive, proximately caused by the action of other defendants,

18  employees, assigns, and agents.

19  **Fourth Claim For Relief**
    **Wrongful Termination**
20  **In Violation of Public Policy**
    **Against Defendants Sirva, Inc.**

21    54.  Plaintiff renews and incorporates herein by reference as if

22  set forth fully below, the allegations in Paragraphs 1 through 53,
23
    above.
24    55.  On March 13, 2006, defendants Sirva, Inc. and Nal Worldwide
25
    subjected plaintiff to an involuntary and wrongful termination of her
26
    employment.
27    56.  Plaintiff's termination was a part of defendants'
28
    discriminatory practices and in retaliation for plaintiff's pursuit of

14

her rights to complain about the discriminatory and harassing treatment she was receiving as well as filing a claim with the department of Fair Employment and Housing, in violation of the Labor Code, Health and Safety Code, the California Fair Employment and Housing Act and Title VII of the Civil rights Act of 1964 ("Title VII"), 42 USC §2000e et seq.

**Fifth Claim For Relief**
**Negligent Misrepresentation**
**Against Defendants Sirva, Inc., Beardsley and Whelan**

57. Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 49, above.

58. During times relevant to this complaint, defendants Nal Worldwide, Beardsley and Whelan made or caused to be made misrepresentations concerning plaintiffs' employment status, with no reasonable ground for believing it to be true, including, but not limited to, the following:

a. assuring plaintiff that her employment with Sirva, Inc. would be transferred to Nal Worldwide;

b. plaintiff would be transferred back to Sirva, Inc., until such Time that her physician clears her to resume her employment activities then she would be re transferred to Nal Worldwide;

c. plaintiff would be re transferred to Nal Worldwide if there was an available position for her;

d. plaintiff's medical coverage would continue in full force and effect.

59. Each defendant knew, or should have known, their representations to be false and they had neither accurate nor any other information to corroborate their representations.

60. Each defendant was aware that without such information neither

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  they, nor any of them, could accurately make the representations herein

2  alleged.

3      61.  Notwithstanding the above, each defendant concealed their lack

4  of corroborating information and their contrary information known to

5  them  as  well  as  their  consequent  intention  not  to  make  such

6  representations accurate from plaintiff.

7      62.  As  a  direct  and  foreseeable  consequence  of  defendants'

8  conduct, plaintiff has suffered damages in the sum to be determined at

9  a trial on this matter.

10  **Sixth Claim For Relief**
    **Negligence**
11  **Against All Defendants**

12      63.  Plaintiff renews and incorporates herein by reference as if

13  set forth fully below, the allegations in Paragraphs 1 through 62,

14  above.

15      64.  Each  defendant  recklessly  or  negligently,  and  with  an

16  unreasonable  lack  of  such  skill,  prudence  and  diligence  commonly

17  possessed  and  used  by  like  individuals  or  entities  in  defendants'

18  position as plaintiff's employers, managers and supervisors, committed

19  the wrongful acts alleged herein.

20      65.  At all times relevant hereto, each defendant owed a duty of

21  care to plaintiff.  During times relevant to this action, each defendant

22  breached the duty of care owed to plaintiff, to plaintiff's detriment,

23  damage, loss, and injury.

24      66.  As  a  direct  and  foreseeable  consequence  of  defendants'

25  conduct, each plaintiff has suffered damages in the sum to be determined

26  at a trial on this matter.

27  ///

28  ///

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

**Seventh Claim For Relief**
**Breach of Oral Contract**
**Against All  Defendants**

67.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 66, above.

68.  Defendants Sirva, Inc., Nal Worldwide, Beardsley and Whelan, were under contract with plaintiff to keep her work environment free from harassment, discrimination and intentional injury.

69.  Plaintiffs discovered later that defendants breached their oral agreements by tolerating and participating in a pattern of conduct which was harassing and discriminating against her to her injury.

70.  The relationship between plaintiff and defendants includes an implied covenant of good faith and fair dealing.  This covenant requires that each party act with fairness and good faith toward the other, and that neither party should take any action to prevent the other from reaping the benefits of the relationship.  The covenant further required each defendant to refrain from needless injury or damage toward plaintiff.

71.  The above-described acts and omissions of defendants constituted a breach of contract including a breach of the covenant of good faith and fair dealing and said breach was a substantial factor in causing damage, loss, and injury to plaintiff.

72.  As a direct and foreseeable consequence of defendants' conduct, each plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Eighth Claim For Relief**
**Defamation and Slander Against**
**All Defendants**

73.  Plaintiff renews and incorporates herein by reference as if

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1 set forth fully below, the allegations in Paragraphs 1 through 72,

2 above.

3      74.  The conduct by defendants Sirva, Inc., Nal Worldwide, Cortez

4 and Beardsley as set-forth above, was intentional in nature and stated

5 to third parties so that they would believe the truth of what was being

6 stated, and they did in fact believe the truth of what was stated to

7 plaintiff's detriment.  As a result of the same, defendants defamed and

8 slandered plaintiff.

9      75. As a direct and foreseeable consequence of defendants'

10 conduct, plaintiff has suffered damages in the sum to be determined at

11 a trial on this matter.

12 **Ninth Claim For Relief**
**Civil Conspiracy Against**
13 **All Defendants**

14      76.  Plaintiff renews and incorporates herein by reference as if

15 set forth fully below, the allegations in Paragraphs 1 through 75,

16 above.

17      77.  Subsequent to and during the conduct complained of herein, and

18 continuing throughout the course of plaintiff's employment with

19 defendants, defendants conspired and agreed among themselves to coerce

20 plaintiff to quit her employment with defendants by engaging in a

21 pattern of harassment and violative conduct as complained of herein.

22      78.  All defendants conspired to their collective benefit and

23 plaintiff's detriment and injury as alleged herein.

24      79. As a direct and foreseeable consequence of defendants'

25 conduct, plaintiff has suffered damages in the sum to be determined at

26 a trial on this matter.

27 **Tenth Claim For Relief**
**Intentional Infliction of Emotional Distress**
28 **Against All Defendants**

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

80.   Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 79, above.

81.   In so doing the conduct complained of herein, defendants, and each of them, pursued an outrageous course of conduct, intentionally and/or recklessly, proximately causing plaintiff severe emotional distress, shock and other highly unpleasant emotions.

82.  As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Eleventh Claim For Relief**
**Negligent Infliction of Emotional Distress**
**Against All Defendants**

83.   Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 82, above.

84.  At all times herein mentioned, it was foreseeable to defendants that as a proximate result of their conduct as alleged herein, plaintiff would be caused to suffer severe emotional distress, shock and other highly unpleasant emotions.

85.  As a proximate result of defendants' conduct as alleged herein, plaintiff suffered severe emotional distress, shock and other highly unpleasant emotions.

86.  As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

///

///

///

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

**Twelfth Claim For Relief**
**Failure To Make Reasonable Accommodation**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 12101-12117**
**Against Defendant Sirva, Inc.**

87.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 85, above.

88.  Defendants Sirva, Inc. and Nal Worldwide discharged plaintiff while she was on disability leave.

89.  Defendants were aware of plaintiff's disability.

90.  At the time of plaintiff's discharge, she was an employee with a disability and was qualified to do her job with reasonable accommodation by the employer of her disability.

91.  Defendants failed and/or refused to provide plaintiff a reasonable accommodation for her disability and instead, terminated plaintiff's employment.

92.  As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Thirteenth Claim For Relief**
**Retaliation**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e-3(a)**
**Against All Defendants**

93.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 92, above.

94.  As set forth above, as a result of plaintiff's pursuit of her rights to report and complain of disparate treatment and continued harassment in the workplace, she was discriminated against and eventually terminated while on disability leave.

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

95.     Defendants have taken actions which adversely affected plaintiff as a result of plaintiff's exercise of protected conduct.

96.     As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Fourteenth Claim For Relief**
**Hostile Environment**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e, _Et Seq._**
**Against All Defendants**

97.     Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 96, above.

98.     Plaintiff was subjected to unwelcome sexual harassment and other verbal or physical conduct of a sexual nature, which was based on sex.  Such harassment affected the term, condition and privilege of employment, for which all defendants were contributors.

99.     As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Fifteenth Claim For Relief**
**False Imprisonment**
**Against Defendants Sirva, Inc. And Cortes**

100.    Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 99, above.

101.    Plaintiff was subjected to false imprisonment by defendants Sirva, Inc. and Cortes, through the conduct of defendant Cortes when she was forced to remain at defendant Sirva, Inc. after hours and told that she could not leave until she completed a task which the computer would not allow her to complete.

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1    102.  As a direct and foreseeable consequence of defendants'

2  conduct, plaintiff has suffered damages in the sum to be determined at

3  a trial on this matter.

4  **Sixteenth Claim For Relief**
   **Assault and Battery**

5  **Against Defendants Sirva, Inc. And Cortes**

6    103.  Plaintiff renews and incorporates herein by reference as if

7  set forth fully below, the allegations in Paragraphs 1 through 102,

8  above.

9    104.  Plaintiff was subjected to assault and battery by defendants

10  Sirva, Inc. and Cortes, through the conduct of Cortes, by his constant

11  yelling and occasional throwing of papers at plaintiff.  Such conduct

12  was committed by defendant Cortes with the intent to cause plaintiff

13  apprehension of immediate injury and the reasonable apprehension of an

14  unwanted physical touching.  Such thrown items were intended to, and

15  did, create an unwanted touching of plaintiff.

16    105.  As a direct and foreseeable consequence of defendants'

17  conduct, plaintiff has suffered damages in the sum to be determined at

18  a trial on this matter.

19

                    **PUNITIVE AND EXEMPLARY DAMAGES**
20

21    106.  The above-mentioned acts of defendants were willful, wanton,

    malicious, and oppressive, and were performed with a conscious disregard
22
    for the rights of plaintiff, so as to justify punitive and exemplary
23
    damages in the amount to be determined at trial.
24
      **WHEREFORE, plaintiff** prays:
25
      1.  For general and specific damages, against all cross-defendants,
26
    joint and severable;
27
      2.  For Back Pay, according to proof;
28
      3.  For Front Pay according to proof;

**[PROPOSED] AMENDED COMPLAINT**
**FOR DAMAGES**

1    4.    For Statutory Damages according to proof;

2    5.    Punitive and exemplary damages, according to proof;

3    6.    For attorneys' fees;

4    7.    For costs of such suit; and

5    8.    For whatever further relief that the Court deems proper.

6

7

8    Dated: November 15, 2007    _____

                                                  Robert E. Thompson, Esq.

                                                  Attorney for Plaintiff

9                                                      Gabrielle Lema

10

11   **V.    DEMAND FOR JURY TRIAL**

12

13       Plaintiff hereby demands a jury trial in the above-captioned action.

14

15

16   Dated: November 15, 2007_____

_____Robert E. Thompson, Esq.

17                                                     Attorney for Plaintiff

                                                  Gabrielle Lema

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] AMENDED COMPLAINT
FOR DAMAGES