1  Robert E. Thompson, Esq.
   110 Sutter Street, Suite 501
2  San Francisco, California  94104
   California State Bar No. 93022
3  Telephone:  (415)  543-2818
   Facsimile:  (415)  788-6144
4
   Attorney for Plaintiff
5  Gabrielle Lema

6                    **UNTIED STATES DISTRICT COURT**

7             **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8                       **SAN JOSE DIVISION**

9

10  _____ )
    GABRIELLE LEMA,                  )
11                                   )   **CASE NO. C07-03631 JL**
                                     )
12               Plaintiff,          )   **CORRECTED [PROPOSED]**
                                     )   **AMENDED COMPLAINT FOR DAMAGES**
13                                   )   **FOR DENIAL OF CIVIL RIGHTS IN**
                                     )   **EMPLOYMENT, VIOLATION OF TITLE VII**
14        v.                         )   **OF THE CIVIL RIGHTS ACT; AND**
                                     )   **VARIOUS PENDENT STATE CLAIMS**
15                                   )
    SIRVA/NAL WORLDWIDE LOGISTICS,)
16  SIRVA, INC., JUAN CORTES,        )
    JOE JENIO, SCOTT BLACK, KEN      )
17  WHELAN, MARILYN BEARDSLEY,       )
    RAMON PADILLA,                   )
18                                   )
                                     )
19               Defendants.         )
                                     )
20  _____ )

21       Plaintiff  Gabrielle  Lema  complains  of  defendants  Sirva/Nal

22  Worldwide Logistics, Sirva, Inc., Juan Cortes, Joe Jenio, Scott Black,

23  Ken Whelan, Marilyn Beardsley, Ramon Padilla, for violations of her

24  civil rights and alleges the following:

25  **I.    PROCEDURAL BACKGROUND**

26       1.  On April 23, 2007, following her receipt of a "Right To Sue"

27  letter, plaintiff caused the filing of a Complaint For Damages, as a

28  Pro Per plaintiff, in the Superior Court for the State of California,

1  County of Alameda, Case Number G 07322091, against defendants Sirva/Nal
2  Worldwide Logistics, Juan Cortes, Joe Jenio, Scott Black, Ken Whelan,
3  Marilyn Beardsley and Ramon Padilla.  Plaintiff, in Pro Per, filed an
4  amendment to the State Court complaint on May 30, 2007.  Thereafter, On
5  July 13, 2007, defendants Sirva/Nal Worldwide Logistics, Sirva, Inc.,
6  Joe Jenio, Scott Black, Ken Whelan, and Ramon Padilla, filed and joined
7  in a Notice of Removal, respectively.  On July 17, 2007, Sirva/Nal
8  Worldwide Logistics, Sirva, Inc., Joe Jenio, Scott Black, Ken Whelan,
9  and Ramon Padilla, filed their joint Answer to the Complaint For
10  Damages. On August 13, 2007, plaintiff in Pro Per, filed an Opposition
11  and Rebuttal to Defendant's Notice of Removal of Civil Action.   On
12  September 4, 2007, undersigned counsel entered appearance to represent
13  plaintiff in this action.

## II.  PARTIES

15      2.   Plaintiff is a former employee of defendants Sirva/Nal
16  Worldwide Logistics and Sirva, Inc., when she was injured and
17  discriminated against and wrongfully discharged from her employment in
18  2006.  Defendants Juan Cortes, Joe Jenio, Scott Black, Ken Whelan,
19  Marilyn Beardsley, Ramon Padilla, were supervisors, officers and/or co-
20  workers for plaintiff and each has participated in the wrongdoing which
21  contributed to plaintiff's harassment, injuries, damages.

## III. FACTUAL BACKGROUND

23      3.   In or around September 2000, plaintiff began her employment
24  with defendant Sirva/Nal Worldwide Logistics and/or Sirva, Inc.
25  [hereinafter referred to collectively herein as ("Sirva, Inc.")].

26      4.   During the years of 2000, 2001, 2002 and 2003, plaintiff was
27  able to perform the tasks given her in a satisfactory manner and the
28  work environment appeared congenial.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

5. In 2004, plaintiff's employment experienced an ownership and management change which, unbeknownst to plaintiff, would change the workplace dynamic for her forever.

6. Following the 2004 ownership and management transition, plaintiff began experiencing harassment and discrimination in the workplace.

7. As an example of subtle yet racial remarks, plaintiff's supervisor, Joe Jenio, while walking by plaintiff's cubicle and while looking at her greeted plaintiff by saying "what's up sista". This greeting was intentionally racial, negative and demeaning to plaintiff and it was outside of the nature of their relationship.

8. After the ownership and management change, plaintiff's work load began to increase and by July 2004, plaintiff was given more work to handle at one time than her co-workers. When plaintiff inquired as to why she was being over loaded with work that had been designated to her co-workers, defendants Black and Cortes said they would review the issue and would have all co-workers trained on all accounts so that all the work would not be designated to her. Despite the fact that all defendants knew that plaintiff was over worked by taking on the work of her co-workers, they neither stopped giving her more work nor trained all co-workers on all accounts as they represented that they would.

9. Beginning in December 2004 and continuing through February 2005, Defendant Joe Jenio would come to plaintiff's cubicle and infer that a male was under her desk for sexual reasons saying things like "is Johnny down there". He continued this assault to the point that it was purely annoying, uncomfortable and demeaning to plaintiff. Defendant Jenio would approach plaintiff from behind while se was seated and pull her chair back and bend down looking under her desk and skirt while

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1   presumable looking for "Johnny" under her desk. Defendant Jenio would

2   also engage a co-worker in his harassment of plaintiff by making

3   various sexual innuendos including his description of plaintiff as "a

4   wild one".   Eventually, the co-worker began to harass plaintiff

5   independent of defendant Jenio, but conducting himself in a similar

6   manner of scooting his chair close enough to plaintiff and looking under

7   her desk, and presumably her skirt, in search of "Johnny".   Defendant

8   Jenio would also, occasionally, come up from behind and begin massaging

9   plaintiff's shoulders.   Plaintiff felt powerless as defendant Jenio was

10  her boss. This particular conduct continued for approximately two

11  months.

12      10. On another occasion, plaintiff was returning from the restroom

13  in the office area when she was stopped by two employees. As plaintiff

14  was standing at one of the employee's cubicle, defendant Cortes

15  approached and asked the employee whether he had a ruler. Defendant

16  Cortes then proceeded to bend down near plaintiff's knee where he placed

17  the ruler against her leg, causing her to question his motives.

18  Defendant Cortez failed and/or refused to respond and instead, left the

19  vicinity.

20      11. On another occasion, Cortes showed this responding party and

21  others a sexually inappropriate joke about nuns which he claimed to have

22  been left in the photocopier.

23      12. From at least December 2004 through January 2005, throughout

24  the day friends and co-workers of plaintiff would exchange email jokes

25  and other communications and defendant Cortes would come into

26  plaintiff's area, read them and participate in comment and laughter.

27  Never had the email exchange presented a problem or generated a

28  complaint.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

13.  In or around January 2005, defendants denied plaintiff of her requested vacation over the period which included Martin Luther King Day and instead, she was ordered to do work for another co-worker who was later given time off during that time period requested by plaintiff but denied to her by defendants.

14.  The conduct of each defendant toward this responding party was couched in racial and sexual dynamics and innuendos.  In their continuing effort to permeate the work environment with such inequality, defendants violated plaintiff's civil rights.

15.  Once plaintiff began reporting unfair treatment to her supervisors, defendants began a pattern of picking on her and forcing her to perform more tasks and work more hours than her co-workers, to her injury and damage.

16.  As an example of the continuing and discriminating treatment of plaintiff by defendants, on one occasion, plaintiff was ordered to leave her work assignment to work on an assembly line, which was not her job and would mean that she would fall behind in completing her own assignments.  Plaintiff was the only account representative from her team required to do this task.  When plaintiff was done with the assembly line work, defendant Cortes asked her where she was going. When plaintiff replied she was going to her computer to make sure her work was completed so that she could go home, defendant Cortes was visibly irritated, although other co-workers of plaintiff had already left for home.

17.  In or around February 2005, plaintiff was informed by defendant Cortes that she had to take over a co-worker's account.  When plaintiff mentioned that another co-worker had been previously trained for such an account, defendant Cortes responded that he wanted plaintiff

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

to take on this task, despite the fact that he knew she already was doing more than her share of the tasks and that by taking over the co-worker's account would only leave the co-worker with one account.

18.  On February 10, 2005, while at work, plaintiff's zipper on the front of her pants broke.  As she was looking in her desk for safety pins in an attempt to close the front of her pants, defendant Padilla approached her at her cubicle regarding the taking of her photograph. Plaintiff asked Padilla could he come back later, but he proceeded to defendant Black's office claiming that she refused to take her picture. Defendant Black then approached plaintiff's cubicle and demanded that she take her picture immediately.  When she cautioned defendant Black that she could not get out of her chair at that time, he began yelling at her and informed her that he was going to write her up.  As soon as everyone left her cubicle area, plaintiff went in the bathroom with the safety pins she found and closed the front of her pants.  Plaintiff was crying because of the assaultive, threatening and demeaning Black outburst and threat about writing her up because of the incident.  Upon exiting the bathroom, plaintiff visited defendant Black's office and explained the situation to him.  As she was leaving defendant Black's office, she had to pass defendant Padilla and informed him that he could take her picture, but she needed to first clear the results of the tears from her face.  As plaintiff came out from the bathroom Padilla was standing with a driver who was staring down at her zipper area. Later, she received two telephone calls from two male employees  who were located on the opposite side of the warehouse from each other. They each indicated to her that they had heard what had transpired. After receiving the second telephone call, plaintiff broke down in tears and in disbelief that defendant Padilla, or anyone else, would tell people

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

especially males, about her zipper incident, as guys were now looking down between her legs to see what they can see. Despite the fact that Black said that he was writing Padilla up for what he claimed to be harassment, he never followed through with such a writing.

19. Indeed, on or about February 11, 2005, plaintiff was informed by another co-worker that defendant Padilla did not get in trouble for the zipper incident and instead was advised by defendant Black not to worry, "she is a woman she'll be over it about a week".

20. In or around February 2005, a co-worker of plaintiff informed her that defendant Black instructed her not to discontinue talking to plaintiff.

21. In or around March 2005, plaintiff asked for help with some of her acquired assignments because she was feeling ill, her blood pressure was high, and the warehouse personnel were not being efficient so that the job could be completed. Defendant Cortes ignored plaintiff's plea for help.

22. On another occasion, a customer called plaintiff claiming that another co-worker had not done her inventory for three months and that plaintiff's supervisors told the customer that plaintiff was taking over the accounts of this co-worker. This was the first that plaintiff had heard that she was taking over more accounts from a co-worker so she proceeded to management to obtain clarification. Plaintiff had no knowledge of the accounts in question and asked defendant Cortes about the inventory not being done for three months and asked him whether he knew how to do the accounts but she was directed defendant Black who directed her to the co-worker whose accounts had been reassigned to plaintiff. Despite their denials to the contrary, plaintiff knew that all managers were required to know how to run the accounts and

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1   inventory.   Once  they  gave  the  co-worker's  accounts  to  plaintiff,

2   plaintiff  began  receiving  evil  looks  from  the  co-worker  and  the  co-

3   worker  stopped  talking  with  her.

4       23.  In  or  around  March  2005,  at  4:15,  plaintiff  was  attempting  to

5   complete  her  work  for  the  day  so  that  she  could  leave  work  at  4:30,  when

6   her  manager,  defendant  Cortes,  came  to  her  desk  and  questioned  whether

7   she  had  inbounded  freight  that  had  come  in  from  Powerlight.  When  she

8   responded  that  she  tried  several  times  but  was  unsuccessful  as  it  kept

9   bouncing  back,  and  that  she  had  another  worker  try  and  it  kept  bouncing

10  back,  defendant  Cortes  started  yelling  at  defendant,  in  the  presence  of

11  at  least  one  co-worker,  and  ordering  her  to  do  it  then  hurled  a  stack

12  of  papers  toward  her  and  ordered  her  not  to  leave  the  building  until  she

13  had  completed  the  task.  When  plaintiff  became  ill  and  was  finally

14  allowed  to  leave  work,  she  went  to  the  doctors  and  discovered  that  her

15  chest  pain  and  migraines  were  the  results  of  an  anxiety  attack.

16      24.  Again,  on  or  about  March  25,  2005,  a  customer  asked  plaintiff

17  about  some  freight  in  an  email.  Defendants  Cortes  and  a  co-worker  came

18  to  plaintiff's  desk  area  and  defendant  Cortes  directed  her  to  respond

19  to  the  email.  Despite  his  knowledge  that  plaintiff  was  already  swamped

20  with  other  work,  defendant  Cortes  continued  his  directive  that  plaintiff

21  respond  to  the  email.  Plaintiff  then  informed  defendant  Cortes  that  she

22  would  respond  to  the  email  once  she  gets  her  orders  out  but  defendant

23  Cortes  continued  to  stand  over  her  as  if  he  was  not  going  to  leave  until

24  she  responded  to  the  email.  Plaintiff  became  so  stressed  that  everything

25  that  she  was  trying  to  hold  inside  of  her  came  out  and  requested  that

26  defendant  Cortes  leave  her  alone.   Defendant  Cortes  continued  to

27  exacerbate  the  situation  by  yelling  at  her  that  "you  don't  do  anything".

28  When  plaintiff  left  work  that  day,  she  went  straight  to  the  doctor's

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

office as she was experiencing more chest pains and could not stop shaking. She was so distraught that she became disoriented and went the wrong way to her doctor's office and got lost. When she arrived at the doctor's office, the doctor's assistant observed that this responding party was having difficulty and could not respond to her questions. She then took her blood pressure. When her doctor completed her examination, she said "enough is enough and I am taking you out of that job effective immediately"! When plaintiff inquired about her job, her doctor advised that she needs to worry about her health.

25. In a continuing effort to harass plaintiff, on or about March 28, 2005, defendant Cortes called plaintiff's residence, asking her to come into work to do an evaluation which he claimed had to be completed and forwarded headquarters that week. This was plaintiff's birthday and she was on medical leave. Defendant's request caused plaintiff so much stress that she called her doctor and was told that she did not place her on leave so that she could continue to be harassed by defendants and she instructed plaintiff not to communicate with defendants. Defendant Cortes called plaintiff three more times regarding the purported evaluations. During this same period, plaintiff telephoned co-workers and found that they knew nothing of the purported evaluation.

26. In or around April 2005, this responding party telephoned to see if they had received her Worker's Compensation paperwork and was advised by Kristy Scalous that the paperwork had been turned over to Steven Moeller however he stated that he had never seen the paperwork and she should call the insurance company. The insurance company reported that it had not seen the Worker's Compensation paperwork either.

27. In or around April 2005, plaintiff began to have escalating

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  problems with receiving her disability pay and when she inquired she was

2  informed that defendant Marilyn Bearsdley had telephoned to say that

3  responding party was already receiving Worker's Compensation pay from

4  the company, a representation she knew to be false.

5      28.  In or around May 2005, Ken Whelan disclosed to a co-worker

6  that plaintiff's physician had ordered that she be placed on disability

7  leave, shared plaintiff's medical information with the co-worker, then

8  stated to her "I know a doctor to call to go out on disability,"

9  insinuating that plaintiff's physician was dishonest and that plaintiff

10  was not disabled.

11      29.  On or about July 15, 2005, while on disability leave,

12  plaintiff received notification that her unit had been purchased by Nal

13  Worldwide LLC, and that each employee's employment would be transferred

14  to the employment of Nal Worldwide LLC.

15      30.  Beginning about July 2005 and continuing through September

16  2005, plaintiff began communicating with Erwin about her transfer

17  Sirva/Nal.  Plaintiff received her activated medical card and was able

18  to utilize the same for about a month or until her medical card failed

19  to work.  When she called Erwin regarding her medical card, Erwin had

20  Merconi contact plaintiff who informed her that she had been moved back

21  to defendant Sirva, Inc.'s coverage until she returned to work.

22  According to defendant Beardsley, although plaintiff was moved from Nal

23  Worldwide back to Sirva, Inc., she would be allowed to return to Nal

24  Worldwide once her doctor releases her to return to work.

25      31.  In or around July 2005, another co-worker of plaintiff

26  informed her that defendant Cortes instructed him to discontinue visits

27  to plaintiff's residence "because she is the enemy because she filed a

28  claim against us".

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

32.   In 2006, plaintiff discovered that defendant Black was bragging about how the company "finally got rid of her," referring to plaintiff.

33.   In or around March 2006, plaintiff telephoned Mary Menconi, HR Department, and informed her that she was continuing to be harassed. Menconi advised her that all she knew was she was out on long term disability. She stated she would talk to the head director of human resources and get back to plaintiff.  A week later plaintiff received a telephone call from co-workers informing her that Erwin was in town to conduct an investigation.  Plaintiff spoke to co-workers who shared that she was harassed during her employment with Sirva.

34.   On or about March 10, 2006, while on disability leave, plaintiff received a termination letter stating her position will be terminated if there were no positions available for her.  Plaintiff became stressed while reading this letter in disbelief that she was being punished for reporting the harassment she was subjected to.

35.  On or about March 10, 2006, plaintiff sent two emails stating that she had not yet been released to return to work and she inquired about available positions within the company.  Plaintiff received no response or attempt at accommodation.

36.  In or around March 2006, plaintiff received a telephone call from Erwin stating that she had concluded her investigation and did not find evidence supporting plaintiff's harassment claim.  In response to plaintiff's inquiry into the name of the company president, Erwin refused to provide the requested identity.

37.  On or about March 28, 2006, plaintiff's health continued to worsen and she felt once again that she was being punished for speaking out against discrimination and harassment.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

38.   During times when plaintiff would receive treatment in 2005, she later discovered that her medical insurance would not always cover her medical expenses leaving her with unpaid medical bills in excess of $20,000.00.

39.   This wrongful conduct also forced plaintiff to terminate her pregnancy with her first and only child.   The fact that plaintiff was now unemployed and was in debt for more than $20,000, exacerbated plaintiff's stress.

40.   To date, defendants, and each of them, has failed and refused to redress the wrongs done to plaintiff necessitating plaintiff's pursuit of this action.

**IV.   CLAIMS FOR RELIEF**

**First Claim For Relief**
**Denial of Civil Rights**
**Race and Sex Discrimination**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e, *Et Seq*.**
**Against All Defendants**

41.   Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 40, above.

42.   During times relevant to plaintiff's employment with defendant Sirva, Inc., each defendant intimidated plaintiff and deprived plaintiff of her right to be free from intimidation, because of her race, gender, exercising of her rights in a labor dispute.

43.   During times relevant to the complaint, defendants shared a business and/or professional relationship with plaintiff.

44.   During times, each defendant engaged in verbal conduct of a hostile and sexual nature against plaintiff based on her gender and race that were unwelcome, pervasive and severe.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

45.  As a result of the employment relationship between defendants and plaintiff, there was an inability by plaintiff to terminate the business and/or professional relationship between herself and defendants.

**Second Claim For Relief**
**Harassment and Discrimination**
**Violation of California Government**
**Code § 12900, *Et Seq*.**
<u>**Against All Defendants**</u>

46.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 45, above.

47.  At all times, Government Code section 12940 Et. Seq. was in full force and effect and was binding upon defendants, and each of them. These state and federal statutes required defendants to refrain from discrimination and harassment against an employee such as plaintiff and to refrain from discharging or dismissing any individual for opposing sexual harassment, sex discrimination and other forms of discrimination.

48.  Defendants discriminated against plaintiff on the basis of sex, marital status and for otherwise opposing sexual harassment in the workplace, in violation of Section 12941 by engaging in the course of conduct  more fully set forth in the paragraphs set forth above and below.

49.  Plaintiff filed a timely charge alleging sexual discrimination and harassment as a result of plaintiff being a female with the Equal Employment Opportunity Commission.

**Third Claim For Relief**
**Harassment and Discrimination**
**Violation of The Fair Employment And Housing Act**
**California Government Code § 12900, *Et Seq*.**
<u>**Against All Defendants**</u>

50.  Plaintiff renews and incorporates herein by reference as if

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  set forth fully below, the allegations in Paragraphs 1 through 49,
2  above.

3      51. Defendants, and each of them, violated the Fair Employment and
4  Housing Act, by, among other things:

5      a. subjecting plaintiff to harassment in the workplace, as set
6  forth herein and elsewhere;

7      b. subjecting plaintiff to stalking in the workplace, as set forth
8  herein and elsewhere;

9      c. subjecting plaintiff to wrongful termination of her employment;

10     52.    Plaintiff's termination was a part of defendants'
11  discriminatory practices and in retaliation for plaintiff's disclosing
12  and pursuing her rights to complain to her employers about the
13  discriminatory and harassing treatment she was receiving.

14     53. For the reasons stated herein and elsewhere, each defendant
15  is liable to plaintiff for all damages, whether compensatory, special
16  or punitive, proximately caused by the action of other defendants,
17  employees, assigns, and agents.

18  **Fourth Claim For Relief**
    **Wrongful Termination**
19  **In Violation of Public Policy**
    **Against Defendants Sirva, Inc.**
20
       54. Plaintiff renews and incorporates herein by reference as if
21
    set forth fully below, the allegations in Paragraphs 1 through 53,
22
    above.
23
       55. On March 13, 2006, defendant Sirva, Inc. subjected plaintiff
24
    to an involuntary and wrongful termination of her employment.
25
       56. Plaintiff's termination was a part of defendants'
26
    discriminatory practices and in retaliation for plaintiff's pursuit of
27
    her rights to complain about the discriminatory and harassing treatment
28
    she was receiving as well as filing a claim with the department of Fair

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  Employment and Housing, in violation of the Labor Code, Health and

2  Safety Code, the California Fair Employment and Housing Act and Title

3  VII of the Civil rights Act of 1964 ("Title VII"), 42 USC §2000e et seq.

4  **Fifth Claim For Relief**
   **Negligent Misrepresentation**

5  **Against Defendants Sirva, Inc., Beardsley and Whelan**

6      57.  Plaintiff renews and incorporates herein by reference as if

7  set forth fully below, the allegations in Paragraphs 1 through 49,

8  above.

9      58.  During times relevant to this complaint, defendants Sirva,

10 Inc., Beardsley and Whelan made or caused to be made misrepresentations

11 concerning plaintiffs' employment status, with no reasonable ground for

12 believing it to be true, including, but not limited to, the following:

13     a.  assuring plaintiff that her employment with Sirva, Inc. would

14 be transferred to Nal Worldwide;

15     b.  plaintiff would be transferred back to Sirva, Inc., until such

16 time that her physician clears her to resume her employment activities

17 then she would be re transferred to Nal Worldwide;

18     c.  plaintiff would be re transferred to Nal Worldwide if there was

19 an available position for her;

20     d.  plaintiff's medical coverage would continue in full force and

21 effect.

22     59.  Each defendant knew, or should have known, their

23 representations to be false and they had neither accurate nor any other

24 information to corroborate their representations.

25     60.  Each defendant was aware that without such information neither

26 they, nor any of them, could accurately make the representations herein

27 alleged.

28     61.  Notwithstanding the above, each defendant concealed their lack

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1 | of corroborating information and their contrary information known to
2 | them as well as their consequent intention not to make such
3 | representations accurate from plaintiff.

4 |     62. As a direct and foreseeable consequence of defendants'
5 | conduct, plaintiff has suffered damages in the sum to be determined at
6 | a trial on this matter.

7 | **Sixth Claim For Relief**
**Negligence**
8 | **Against All Defendants**

9 |     63. Plaintiff renews and incorporates herein by reference as if
10 | set forth fully below, the allegations in Paragraphs 1 through 62,
11 | above.

12 |     64. Each defendant recklessly or negligently, and with an
13 | unreasonable lack of such skill, prudence and diligence commonly
14 | possessed and used by like individuals or entities in defendants'
15 | position as plaintiff's employers, managers and supervisors, committed
16 | the wrongful acts alleged herein.

17 |     65. At all times relevant hereto, each defendant owed a duty of
18 | care to plaintiff. During times relevant to this action, each defendant
19 | breached the duty of care owed to plaintiff, to plaintiff's detriment,
20 | damage, loss, and injury.

21 |     66. As a direct and foreseeable consequence of defendants'
22 | conduct, each plaintiff has suffered damages in the sum to be determined
23 | at a trial on this matter.

24 | **Seventh Claim For Relief**
**Breach of Oral Contract**
25 | **Against All  Defendants**

26 |     67. Plaintiff renews and incorporates herein by reference as if
27 | set forth fully below, the allegations in Paragraphs 1 through 66,
28 | above.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

68.    Defendants Sirva, Inc., Beardsley and Whelan, were under contract with plaintiff to keep her work environment free from harassment, discrimination and intentional injury.

69.    Plaintiffs discovered later that defendants breached their oral agreements by tolerating and participating in a pattern of conduct which was harassing and discriminating against her to her injury.

70.    The relationship between plaintiff and defendants includes an implied covenant of good faith and fair dealing.  This covenant requires that each party act with fairness and good faith toward the other, and that neither party should take any action to prevent the other from reaping the benefits of the relationship.  The covenant further required each defendant to refrain from needless injury or damage toward plaintiff.

71.    The above-described acts and omissions of defendants constituted a breach of contract including a breach of the covenant of good faith and fair dealing and said breach was a substantial factor in causing damage, loss, and injury to plaintiff.

72.    As a direct and foreseeable consequence of defendants' conduct, each plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Eighth Claim For Relief**
**Defamation and Slander Against**
**All Defendants**

73.    Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 72, above.

74.    The conduct by defendants Sirva, Inc., Cortez and Beardsley as set-forth above, was intentional in nature and stated to third parties so that they would believe the truth of what was being stated,

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1  and they did in fact believe the truth of what was stated to plaintiff's

2  detriment.  As a result of the same, defendants defamed and slandered

3  plaintiff.

4       75.  As a direct and foreseeable consequence of defendants'

5  conduct, plaintiff has suffered damages in the sum to be determined at

6  a trial on this matter.

7  **Ninth Claim For Relief**
   **Civil Conspiracy Against**
8  **All Defendants**

9       76.  Plaintiff renews and incorporates herein by reference as if

10 set forth fully below, the allegations in Paragraphs 1 through 75,

11 above.

12      77.  Subsequent to and during the conduct complained of herein, and

13 continuing throughout the course of plaintiff's employment with

14 defendants, defendants conspired and agreed among themselves to coerce

15 plaintiff to quit her employment with defendants by engaging in a

16 pattern of harassment and violative conduct as complained of herein.

17      78.  All defendants conspired to their collective benefit and

18 plaintiff's detriment and injury as alleged herein.

19      79.  As a direct and foreseeable consequence of defendants'

20 conduct, plaintiff has suffered damages in the sum to be determined at

21 a trial on this matter.

22 **Tenth Claim For Relief**
   **Intentional Infliction of Emotional Distress**
23 **Against All Defendants**

24      80.  Plaintiff renews and incorporates herein by reference as if

25 set forth fully below, the allegations in Paragraphs 1 through 79,

26 above.

27      81.  In so doing the conduct complained of herein, defendants, and

28 each of them, pursued an outrageous course of conduct, intentionally

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

1 and/or recklessly, proximately causing plaintiff severe emotional

2 distress, shock and other highly unpleasant emotions.

3     82. As a direct and foreseeable consequence of defendants'

4 conduct, plaintiff has suffered damages in the sum to be determined at

5 a trial on this matter.

6 **Eleventh Claim For Relief**

   **Negligent Infliction of Emotional Distress**

7 **<u>Against All Defendants</u>**

8     83. Plaintiff renews and incorporates herein by reference as if

9 set forth fully below, the allegations in Paragraphs 1 through 82,

10 above.

11     84. At all times herein mentioned, it was foreseeable to

12 defendants that as a proximate result of their conduct as alleged

13 herein, plaintiff would be caused to suffer severe emotional distress,

14 shock and other highly unpleasant emotions.

15     85. As a proximate result of defendants' conduct as alleged

16 herein, plaintiff suffered severe emotional distress, shock and other

17 highly unpleasant emotions.

18     86. As a direct and foreseeable consequence of defendants'

19 conduct, plaintiff has suffered damages in the sum to be determined at

20 a trial on this matter.

21 **Twelfth Claim For Relief**

   **Failure To Make Reasonable Accommodation**

22 **Violation of Title VII of the Civil Rights Act**

   **42 U.S.C. § 12101-12117**

23 **<u>Against Defendant Sirva, Inc.</u>**

24     87. Plaintiff renews and incorporates herein by reference as if

25 set forth fully below, the allegations in Paragraphs 1 through 85,

26 above.

27     88. Defendants Sirva, Inc. discharged plaintiff while she was on

28 disability leave.

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

89.   Defendants were aware of plaintiff's disability.

90.   At the time of plaintiff's discharge, she was an employee with a disability and was qualified to do her job with reasonable accommodation by the employer of her disability.

91.   Defendants failed and/or refused to provide plaintiff a reasonable accommodation for her disability and instead, terminated plaintiff's employment.

92.   As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Thirteenth Claim For Relief**
**Retaliation**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e-3(a)**
**Against All Defendants**

93.   Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 92, above.

94.   As set forth above, as a result of plaintiff's pursuit of her rights to report and complain of disparate treatment and continued harassment in the workplace, she was discriminated against and eventually terminated while on disability leave.

95.   Defendants have taken actions which adversely affected plaintiff as a result of plaintiff's exercise of protected conduct.

96.   As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

///

///

///

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

**Fourteenth Claim For Relief**
**Hostile Environment**
**Violation of Title VII of the Civil Rights Act**
**42 U.S.C. § 2000e, *Et Seq*.**
**Against All Defendants**

97.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 96, above.

98.  Plaintiff was subjected to unwelcome sexual harassment and other verbal or physical conduct of a sexual nature, which was based on sex.  Such harassment affected the term, condition and privilege of employment, for which all defendants were contributors.

99.  As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

**Fifteenth Claim For Relief**
**False Imprisonment**
**Against Defendants Sirva, Inc. And Cortes**

100.  Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 99, above.

101.  Plaintiff was subjected to false imprisonment by defendants Sirva, Inc. and Cortes, through the conduct of defendant Cortes when she was forced to remain at defendant Sirva, Inc. after hours and told that she could not leave until she completed a task which the computer would not allow her to complete.

102.  As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum to be determined at a trial on this matter.

///

///

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

**Sixteenth Claim For Relief**
**Assault and Battery**
**Against Defendants Sirva, Inc. And Cortes**

103.    Plaintiff renews and incorporates herein by reference as if set forth fully below, the allegations in Paragraphs 1 through 102, above.

104.    Plaintiff was subjected to assault and battery by defendants Sirva, Inc. and Cortes, through the conduct of Cortes, by his constant yelling and occasional throwing of papers at plaintiff.  Such conduct was committed by defendant Cortes with the intent to cause plaintiff apprehension of immediate injury and the reasonable apprehension of an unwanted physical touching.  Such thrown items were intended to, and did, create an unwanted touching of plaintiff.

105.    As a direct and foreseeable consequence of defendants' conduct, plaintiff has suffered damages in the sum be determined at a trial on this matter.

### PUNITIVE AND EXEMPLARY DAMAGES

106.    The above-mentioned acts of defendants were willful, wanton, malicious, and oppressive, and were performed with a conscious disregard for the rights of plaintiff, so as to justify punitive and exemplary damages in the amount to be determined at trial.

**WHEREFORE, plaintiff** prays:

1.  For general and specific damages, against all cross-defendants, joint and severable;

2.  For Back Pay, according to proof;

3.  For Front Pay according to proof;

4.  For Statutory Damages according to proof;

5.  Punitive and exemplary damages, according to proof;

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES

6.  For attorneys' fees;

7.  For costs of such suit; and

8.  For whatever further relief that the Court deems proper.

Dated: November 20, 2007

Robert E. Thompson
_____
Robert E. Thompson, Esq.
Attorney for Plaintiff
Gabrielle Lema

## VI.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the above-captioned action.

Dated: November 20, 2007

Robert E. Thompson
_____
Robert E. Thompson, Esq.
Attorney for Plaintiff
Gabrielle Lema

CORRECTED [PROPOSED] AMENDED COMPLAINT
FOR DAMAGES